# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

LISA W.[1],

      **Plaintiff,**

v.

                               **Civil Action No. 2:20-cv-00590**

**KILOLO KIJAKAZI,[2]**
*Acting Commissioner of
Social Security,*

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Lisa W. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB"). Specifically, Plaintiff cites two errors. First, she claims that the Administrative Law Judge ("ALJ") erred in concluding Plaintiff's fibromyalgia was not a severe impairment; and secondly, he improperly considered a prior administrative decision regarding Plaintiff's DIB eligibility despite a defect in that ALJ's appointment during that prior hearing. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

After reviewing the parties' briefs and the administrative record of the Commissioner's findings, this Report concludes that the ALJ's determination that Plaintiff's fibromyalgia was not a severe impairment was supported by substantial evidence, and that the ALJ appropriately relied upon the prior administrative finding regarding Plaintiff's DIB eligibility. Accordingly, for the reasons stated in detail below, this Report recommends that the Court AFFIRM the final decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No. 20) and DENYING Plaintiff's Motion for Summary Judgment (ECF No. 18).

## I.     PROCEDURAL BACKGROUND

This case concerns two DIB applications that Plaintiff filed. On November 9, 2017, the ALJ issued an opinion denying Plaintiff's claim alleging disability from April 17, 2004, through the date of that decision (hereafter "2017 ALJ Decision"). (R. 105, 111). On January 28, 2020, the ALJ issued an opinion denying Plaintiff's claim alleging disability from the date of the 2017 ALJ Decision through the date she was last insured, which was December 31, 2017 (hereafter "2020 ALJ Decision"). Id. at 21, 30. Only the 2020 ALJ Decision is before this Court for review.

**A.     The 2017 ALJ Decision Concerning Plaintiff's Claim for DIB.**

On January 16, 2015, Plaintiff initially filed for DIB. Id. at 100. Plaintiff alleged disability beginning April 17, 2014, based on rheumatoid arthritis, fibromyalgia, depression, and insomnia. Id. at 105. The state agency denied her application initially and again upon reconsideration. Id. at 100. Plaintiff then requested an administrative hearing, which was held on August 23, 2017. Id.

On November 9, 2017, ALJ Kerith Cohen denied Plaintiff's claims for DIB, finding she was not disabled during the period alleged. Id. at 111. The ALJ found that Plaintiff had multiple severe impairments, including degenerative joint disease of the knees, morbid obesity, a right

shoulder impairment, and a left wrist impairment. Id. at 102. The ALJ found that all other impairments were non-severe, noting that "[f]ibromyalgia syndrome is also not a medically determinable impairment, as the regulatory requirements set forth in Social Security Ruling 12-2p are not satisfied in this case." Id. at 104. On March 6, 2018, the Appeals Council ("AC") denied Plaintiff's request for review because the AC found no reason under its rules to review the decision. Id. at 17. Plaintiff did not file any federal court action to contest that decision.

**B.    The 2020 ALJ Decision Concerning Plaintiff's Claim for DIB.**

On April 30, 2018, Plaintiff filed again for DIB. Id. at 17. Plaintiff alleged disability beginning November 10, 2017, the day after the 2017 ALJ Decision. Id. Plaintiff alleged disability based on rheumatoid arthritis, depression, insomnia, chronic joint pain, asthma, bone spurs in both feet, bone spurs in both knees, and fibromyalgia. Id. at 24. A second ALJ, O. Price Dodson, found the same severe impairments that had been found in the 2017 ALJ Decision, namely degenerative joint disease of the knees, morbid obesity, a right shoulder impairment, and a left wrist impairment. Id. at 25. When determining Plaintiff's RFC, the ALJ noted Plaintiff's testimony "that extreme pain from rheumatoid arthritis and fibromyalgia" had left her unable to work, but the ALJ did not find that Plaintiff's fibromyalgia was a severe impairment. Id. The ALJ specified that, while Plaintiff's impairments could cause her alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id.

In making these findings, the ALJ stated that "if the findings in [the 2017 ALJ Decision] . . . are final and binding, then it is reasonable to assume that the severe impairments did not disappear or resolve in one day." Id. at 25. The ALJ gave "great weight" to the 2017 ALJ Decision "because it is supported by the evidence of record as a whole." Id. at 27. The ALJ also noted that,

3

although the prior findings were binding only to the date of the 2017 ALJ Decision, "the evidence in the current claim warrants no changes in the findings" for the remaining month that Plaintiff was insured. Id. However, regarding medical opinions and administrative medical findings, the ALJ did note that he "[could] not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions." Id. at 28.

## C.      Plaintiff's Social Security Appeal in this Court.

In this Court, Plaintiff argues remand is required because the ALJ's determination in the 2020 ALJ Decision is unsupported by substantial evidence. Pl.'s Mem. (ECF No. 19, at 6). She claims that failure to consider Plaintiff's fibromyalgia as a severe impairment was an "error permeat[ing] the remainder of the decision." Id. Plaintiff also argues that the 2020 ALJ Decision must be remanded because it is tainted by a constitutional defect. Id. at 10. Specifically, Plaintiff argues that ALJ Cohen, who rendered the 2017 ALJ Decision, was not constitutionally appointed at the time of that decision under Lucia v. Securities & Exchange Commission, 138 S. Ct. 2044 (2018), and therefore ALJ Dodson was not permitted to rely upon the 2017 ALJ Decision in the 2020 ALJ Decision. Id. at 11. The Commissioner disagrees with each of these points, arguing that Plaintiff failed to meet her burden in proving that fibromyalgia was a severe impairment, and that the 2020 ALJ Decision is untainted by any constitutional challenge to ALJ Cohen's appointment, because the 2017 ALJ Decision is not before the court. See Def.'s Mem. (ECF No. 21, at 9, 13). After a review of the record, this Report considers each of these arguments.

## II.      FACTUAL BACKGROUND

Plaintiff was born on May 1, 1961, and she was fifty-six years old at the time of her alleged onset. (R. 204). She was fifty-eight years old at the time of the 2020 ALJ Decision. Id. She completed two years of college in April 2007. Id. at 246. In the fifteen years reported, Plaintiff

worked as a cashier, claims processor, hospital release-of-information specialist, and a rehabilitation/nursing home unit secretary. Id. at 246-47.

## A.    Plaintiff's Medical History of Fibromyalgia

Plaintiff's arguments in this Court require do not require an extensive review of her medical history generally, only a review of that medical history concerning her current fibromyalgia claim. Plaintiff's primary care physician first noted "fibromyalgia" on Plaintiff's medical records on July 13, 2017, during a follow-up appointment with Beach Health Clinic ("BHC"). Id. at 464. The physician noted fibromyalgia as part of a general list of assessments, without additional detail. Id.

In the following seven months, Plaintiff received treatment for symptoms that were not attributed in the Record to fibromyalgia. On September 1, 2017, JoAnn W. Dervay, M.D., assessed Plaintiff with "multijoint arthritis presumably rheumatoid arthritis," as well as morbid obesity. Id. at 579. On December 29, 2017, Dr. Dervay found that "[t]he right 2nd digit does show an arthritic deformity." Id. at 577. Range of motion for the left wrist was painful. Id. On February 20, 2018, imaging of Plaintiff's left wrist showed "[i]nterval narrowing of the radiocarpal articulation and relative ulnar subluxation of scaphoid and lunate relative to the radius." Id. at 398. Imaging of her right hand showed "narrowing of the radiocarpal joint" that was "consistent with osteoarthritis." Id. at 399. Additional imaging revealed other health concerns, such as "generalized osseous demineralization." Id. at 401. On March 15, 2018, BHC patient records show Plaintiff suffering from severe deformations from polyarthritis, with notes about rheumatoid arthritis. Id. at 531.

The term "fibromyalgia" next appears in Plaintiff's medical records on February 1, 2018, without additional explanation. Id. at 376. In the next few months, Plaintiff's treatment focused mainly on the deterioration of her joints, including demineralization of her bones and polyarthritis

5

Id. at 398-405, 531. "Fibromyalgia" next appears in Plaintiff's medical records on April 12, 2018, in which her physician at BHC notes that "[s]ome of the pain is classic fibromyalgia." Id. at 373. Her physician listed "fibromyalgia" as one of her health concerns, along with severe polyarthritis, obesity, and depression. Id.

On May 10, 2018, Plaintiff's primary care physician noted that Plaintiff was "tender in all the traditional tender spots of fibromyalgia including SI regions." Id. at 372. At this time, Plaintiff reported experiencing four to five hours of swelling and continued chronic pain. Id. On August 16, 2018, the physician noted "fibromyalgia tenderness present." Id. at 371.

## B.   Testimony Before the ALJ.

In November 2019, during a hearing on her second claim, Plaintiff testified that she felt she could not work "[d]ue to the extreme pain that [she] was having from [her] rheumatoid arthritis and fibromyalgia." Id. at 44. She also testified that "medication is the only thing that's doing anything," and that it was hard "to get the pain under control . . . with fibromyalgia and rheumatoid arthritis." Id. at 45. Plaintiff testified generally that her medication made her drowsy, id.; that her hands had become deformed, and the pain made typing difficult, id. at 44; that she used a cane to ambulate, id. at 46; and that she limited time spent standing and sitting, id. at 47-48.

## III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison

<u>Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>Hays</u>, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."  <u>Craig</u>, 76 F.3d at 589.  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed.  <u>Perales</u>, 402 U.S. at 390; <u>see also</u> <u>Lewis v. Berryhill</u>, 858 F.3d 858, 868 (4th Cir. 2017).  Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

Plaintiff's brief identifies two errors in the 2020 ALJ Decision that she claims warrants remand.  She contends that the ALJ's RFC finding is unsupported by substantial evidence because he failed to find Plaintiff's fibromyalgia a severe impairment, and that <u>Lucia v. SEC</u> requires remand because the 2020 ALJ Decision improperly relies upon the 2017 ALJ Decision.  <u>See</u> Pl.'s Mem. (ECF No. 19, at 1).  As explained below, this Report finds no error in the ALJ's analysis of the evidence, including the ALJ's findings that Plaintiff's fibromyalgia was non-severe.  The Report also finds no error in ALJ Dodson's references to the 2017 ALJ Decision.  Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the Court affirm the Commissioner's decision.

A.    **Framework for SSA Disability Evaluation**

Title XVI of the Act provides SSI benefits to "financially needy individuals who are aged,

blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75 (1988)

(citing 42 U.S.C. 1382(a)).   As relevant here, the Act defines "disability" as the inability to

"engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A));

accord 20 C.F.R. § 416.905(a).  An impairment renders an individual disabled only if it is so severe

as to prevent the person from engaging in his or her prior work or any other substantial gainful

activity that exists in the national economy.  See § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination.

20 C.F.R. § 416.920(a)(4).  Specifically, the regulations direct the ALJ to answer the following

five questions:

1.    Is the individual involved in substantial gainful activity?

2.    Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.    Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.    Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.    Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five,

means the claimant is not disabled.  An affirmative answer to questions three or five establishes

disability. The claimant bears the burden of proof during the first four steps. If the analysis reaches

8

step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy.  See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled.  20 C.F.R. §§ 416.920(a)(3); 416.920b.  This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age."  Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)).  Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ.  Hays, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.    The 2020 ALJ Decision, which is currently before the Court for review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date to the date of the hearing.  (R. 20).  At step two, the ALJ found that Plaintiff suffered from severe impairments of degenerative joint disease of the knees, morbid obesity, a right shoulder impairment, and a left wrist impairment.  Id.  At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Id. at 22.  The ALJ developed a finding regarding Plaintiff's residual functional capacity ("RFC").  He determined Plaintiff had numerous limitations, including the limitation that she was able

> to perform light work as defined in 20 C.F.R. [§] 404.1567(b), except for the following: standing and walking would have been limited to three hours out of an eight hour work day; the claimant would have been able to sit five hours in an eight hour work day with normal breaks; lifting and carrying would have been limited to 10 pounds; the claimant would have needed to avoid ladders, ropes, or scaffolding;

all other postural activities could have been performed occasionally; the claimant could have occasionally reached overhead with the left (non-dominant) upper extremity; the claimant could not have worked with hazardous materials or at unprotected heights; the claimant could have frequently, but not constantly, performed handling and fingering with the bilateral upper extremities; and the claimant required the use of a cane to ambulate.

Id. at 24.  At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work, including working as a claims processor or unit secretary, because "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." Id. at 29.   Consequently, the ALJ determined that Plaintiff did not have a qualifying disability during the relevant period and denied her claim for DIB. Id. at 29-30.

**C.     The ALJ properly considered Plaintiff's fibromyalgia in determining Plaintiff's Residual Functional Capacity.**

Plaintiff first argues that the ALJ erred by failing to classify her fibromyalgia as a severe impairment.  Fibromyalgia is a "unique" disorder "of unknown cause" with "symptoms [that] are entirely subjective."   Arakas v. Commissioner, 983 F.3d 83, 91, 97 (4th Cir. 2020) (citations omitted).   In fact, physical examinations of fibromyalgia patients "will usually yield normal results." Id. at 96.  However, fibromyalgia must still be diagnosed according to objective criteria, as outlined by the Social Security Administration in the SSR 12-2p. See SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). In this case, the ALJ found that Plaintiff's fibromyalgia was not a severe impairment under Step One of the two-step analysis, and thus the Fourth Circuit's holding in Arakas v. Commissioner does not require remand.  Further, the Record does not contain sufficient evidence that the diagnostic criteria in SSR 12-2p were met in Plaintiff's case.  Lastly, Plaintiff's medical records fail to clearly exclude alternative disorders that might have caused the symptoms she attributes to fibromyalgia.  Therefore, the ALJ's finding that Plaintiff's fibromyalgia is non-severe is supported by substantial evidence.

10

1. **Criteria for diagnosing fibromyalgia as a "severe impairment" under SSR 12-2p and the two-step test.**

Fibromyalgia must be diagnosed according to two sets of objective criteria outlined by the Social Security Administration in SSR 12-2p. Under the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia ("1990 ACR Criteria"), a person with the following has a medically determinable impairment of fibromyalgia:

1. A history of widespread pain . . . that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present[;]

2. At least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally . . . and both above and below the waist[;] . . . [and]

3. Evidence that other disorders that could cause the symptoms or signs were excluded.

SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). A claimant also has a medically determinable impairment of fibromyalgia under the 2010 ACR Preliminary Diagnostic Criteria ("2010 ACR Criteria") if he or she has the following:

1. A history of widespread pain . . . [;]

2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems . . . , waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations . . . were excluded.

Id. The ACR has further clarified that the 2010 ACR Criteria requires specific pain indexes and symptom severity, the presence of symptoms for at least three months, and that the patient "not have a disorder that would otherwise explain the pain." April R.D. v. Saul, No. 20-cv-210, 2021 WL 3260072, at *11 (E.D. Va. June 29, 2021) (quoting Frederick Wolfe et al., The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity, 62 Arthritis Care & Rsch. 600, 607 (2010)).

Federal Regulations and Social Security Rulings establish a two-step test that ALJs must use to evaluate a claimant's symptoms of any impairments. See 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). ALJs must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." Arakas, 983 F.3d at 95 (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). At Step One, the claimant must show "objective medical evidence of some condition that could reasonably produce the pain." Id. (quoting Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)). For fibromyalgia, these Rules require that the claimant must show a diagnosis consistent with SSR 12-2p and "well-supported by 'the clinical and laboratory diagnostic techniques . . . generally accepted within the medical community as the appropriate techniques to establish the existence and severity of' fibromyalgia." Id. at 107 (quoting SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996)).

Only after the ALJ determines that the impairment could produce the symptoms does the ALJ "assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." Id. at 95 (citing 20 C.F.R. 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4-5). With respect to fibromyalgia, Arakas established that, at Step Two, the ALJ "may not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." Id. (quoting SSR 16-3p, 2016 WL 1119029, at *5). Therefore, at Step Two, a claimant with a diagnostic history of fibromyalgia is "entitled to rely exclusively on subjective evidence." Id. (quoting Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006)). "[A]lthough the two parts of that framework are related, the analysis during each part

is legally distinct, particularly with respect to the significance of objective evidence." <u>In re India G. v. Kijakazi</u>, No. 20-1704, 2021 WL 3930430, at *3 (D. Md. Sept. 1, 2021).

### 2. Criteria for evaluating fibromyalgia consistently with the Fourth Circuit's holding in <u>Arakas</u>.

The Fourth Circuit's recent holding in <u>Arakas</u> establishes the appropriate legal standard for evaluating fibromyalgia claims. The Fourth Circuit reversed the Commissioner's decision denying benefits "[b]ecause the ALJ's evaluation of Arakas's symptoms was based on an incorrect legal standard as well as a critical misunderstanding of fibromyalgia." <u>Id.</u> at 98. In <u>Arakas</u>, the plaintiff had been treated for fibromyalgia for over twenty years. <u>Id.</u> at 91. Her rheumatologist diagnosed her based on "'exquisitely tender trigger points' throughout her neck and shoulder muscles, hips, knees, and upper, mid, and lower back—'in accordance with the diagnostic criteria of the American College of Rheumatology.'" <u>Id.</u> (citing the record). Arakas was prescribed medication specifically for her fibromyalgia, as well as "tender-point injections" and "a cervical epidural block when her pain symptoms were severe." <u>Id.</u> Arakas testified at both ALJ hearings about "the severity, persistence, and limiting effects of her fibromyalgia and other medical conditions." <u>Id.</u> at 93.

The ALJ in <u>Arakas</u> found that Arakas "suffered from the severe medical impairment[] of fibromyalgia," which satisfied Step One of the two-step test. <u>Id.</u> at 94. However, when the ALJ assessed Arakas's RFC, the ALJ "found that Arakas's subjective complaints regarding the severity, persistence, and limiting effects of her symptoms were 'not reliable' and not 'completely consistent with the objective evidence.'" <u>Id.</u> (citing the record). The Fourth Circuit emphasized that this credibility determination was impermissible:

> [A]fter finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. At this step, objective evidence is <u>not</u> required to find the claimant disabled. SSR 16-3p

13

recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effect of symptoms solely because the objective medical evidence does not substantiate" them.

Id. at 95 (citations omitted). The ALJ thus improperly discredited Arakas's subjective statements at Step Two because they were not "completely consistent with the objective evidence." Id. at 96. However, fibromyalgia is a disease with "entirely subjective" symptoms. Id. Furthermore, the plaintiff's physician "had explicitly emphasized that fibromyalgia typically did not produce clinical or laboratory abnormalities." Id. After Arakas, ALJs cannot "rely on objective medical evidence (or the lack thereof—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." Id. at 97; Charlene S. v. Saul, No. 20-853, 2021 WL 2141501, at *3 (D. Md. May 26, 2021).

Lower courts have applied Arakas only at Step Two. See e.g., In re India G., 2021 WL 3930430, at *1-2 ("[T]he ALJ used normal, objective evidence as a factor in discounting plaintiff's subjective complaints about the limiting effects of her fibromyalgia. This is error after Arakas." (citations omitted)); David R. v. Kijakazi, No. 20-1277, 2021 WL 3144528, at *2 (D. Md. July 26, 2021) ("At the second step, the plaintiff is not generally required to produce objective evidence . . . . The Fourth Circuit recently held that this evidentiary rule is particularly forceful in cases where plaintiffs are impaired by fibromyalgia."). Post-Arakas, remand has generally been required only when the ALJ found a significant fibromyalgia impairment, but then subsequently discounted the plaintiff's subjective symptoms under Step Two. See, e.g., In re India G., 2021 WL 3930430, at *1; David R., 2021 WL 3144528, at *2; Charlene S., 2021 WL 2141501, at *1; Bryson v. Berryhill, No. 20-cv-00169, 2021 WL 2517682, at *2 (W.D.N.C. June 18, 2021); Suzanne O. v. Saul, No. 20-cv-61, 2021 WL 1195930, at *2 (E.D. Va. Mar. 30, 2021); Charlene L. v. Saul, No. 19-cv-626,

2021 WL 725822, at *3 (E.D. Va. Feb. 3, 2021); cf. Lisa C. v. Saul, No. 20-01179, 2021 WL 3040019, at *2 (D. Md. July 16, 2021).

However, the Eastern District of Virginia has also remanded cases under Arakas when the ALJ did not find a significant impairment of fibromyalgia, but the record was sufficiently detailed to show independent compliance with the SSR 12-2p factors. In April R.D. v. Saul, a United States Magistrate Judge evaluated sua sponte the ALJ's finding that Plaintiff did not have a significant impairment of fibromyalgia. 2021 WL 3260072, at *10-13. The judge recommended remand because the "[p]laintiff's symptomology . . . [met] both the 1990 and 2010 ACR diagnostic criteria found in SSR 12-2p." Id. at *11. The judge also noted that the ALJ's analysis of fibromyalgia was lacking, and that "[w]ithout understanding how the ALJ evaluated Plaintiff's fibromyalgia, the Court cannot determine whether the ALJ appropriately followed the precedent of Arakas." Id. at *13. In Maggie R.W. v. Saul, the United States Magistrate Judge similarly recommended dismissal because "[i]t appear[ed] that Plaintiff met both the 1990 and 2010 ACR criteria for the classification of fibromyalgia." No. 19-cv-130, 2021 WL 416825, at *9-10 (E.D. Va. Jan. 20, 2021).

### 3. The ALJ finding that Plaintiff's fibromyalgia was not a severe impairment is supported by substantial evidence.

The Court finds that Plaintiff has failed to establish that she had a severe medically determinable impairment of fibromyalgia during, prior to, or after the relevant timeframe in this case. First, the ALJ found that Plaintiff's fibromyalgia was not severe at Step One, and therefore the Fourth Circuit's holding in Arakas is not directly controlling. Second, the Record does not contain sufficient evidence that this Court could independently find that Plaintiff had a severe impairment of fibromyalgia in accordance with SSR 12-2p. Lastly, the ALJ's failure to consider

Plaintiff's fibromyalgia had a minimal impact on the remainder of the ALJ's decision. Therefore, the ALJ's opinion is supported by substantial evidence.

The Fourth Circuit reviewed Arakas in a different posture than the case before the Court now. In Arakas, the ALJ determined on Step One that Arakas's fibromyalgia "could reasonably be expected to cause some of the alleged symptoms," before denying the plaintiff benefits at Step Two. Arakas, 983 F.3d at 96. However, in this case, the ALJ decided under Step One that Plaintiff's fibromyalgia was not "a medically determinable impairment . . . through December 31, 2017, the date last insured." (R. 22). The ALJ also relied upon the 2017 ALJ Decision because "the current record [did] not contain enough evidence . . . to make a good finding of severe impairments." Id. at 25. In the 2017 ALJ Decision, the ALJ found that "[f]ibromyalgia syndrome is also not a medically determinable impairment, as the regulatory requirements set forth in Social Security Ruling 12-2p are not satisfied in this case." Id. at 104. Therefore, because Arakas concerns Step Two, and the current determination was made at Step One, Arakas is not directly controlling regarding the ALJ's assessment of Plaintiff's fibromyalgia.

Furthermore, Plaintiff has not provided the Court with sufficient facts to indicate that she met the SSR 12-2p criteria during the relevant timeframe. Plaintiff has cited April R.D. for the proposition that Arakas applies when "determining whether fibromyalgia is a medically determinable severe impairment" at Step One. Pl.'s Reply (ECF No. 22, at 3). This is incorrect. Arakas did not eliminate claimants' burden to prove fibromyalgia with objective evidence at Step One. See Arakas, 983 F.3d at 95. Furthermore, cases like April R.D. did not apply Arakas directly, but rather had records indicating, independently, that the claimant met the standards of SSR 12-2p. See April R.D., 2021 WL 3260072, at *13; Maggie R.W., 2021 WL 416825, at *9-10. In this

case, Plaintiff has not established that she met either the 1990 ACR Criteria or the 2010 ACR Criteria, particularly the second and third factors under those tests.

Although the two subsequent factors are not established, as detailed below, the Record does show that Plaintiff likely has met the first factor under both the 1990 ACR Criteria and the 2010 ACR Criteria. The first factor requires a "history of widespread pain." SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). The Record contains notations indicating generalized pain, including in April 2018, when Plaintiff was "[s]till having a lot of pain . . . [and s]ome of the pain [was] classic fibromyalgia." (R. 373). In May 2018, Plaintiff "continue[d] with chronic severe pain and tenderness," including "tender[ness] in all the traditional tender spots of fibromyalgia." Id. at 526. In August 2018, Plaintiff's physician "confirm[ed] visible tenderness" in Plaintiff's shoulders, elbows, knees, neck, hips, ankles, feet, and hands, with "fibromyalgia tenderness present." Id. at 371. As these notations cover from April through August 2018, the Record contains sufficient details to find that Plaintiff has a "history of widespread pain" that "persisted . . . for at least 3 months." SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). However, the Record is not sufficiently detailed regarding the other two factors under the tests.

For the second factor, the 1990 ACR Criteria requires "at least 11 positive tender points on physical examination," and provides a list of "18 tender point sites . . . on each side of the body." Id. In Arakas, a rheumatologist diagnosed the plaintiff based on "'exquisitely tender trigger points' throughout her neck and shoulder muscles, hips, knees, and upper, mid, and lower back—'in accordance with the diagnostic criteria of the American College of Rheumatology.'" Arakas, 983 F.3d at 91 (quoting the record). In April R.D., the physician stated that plaintiff had "18/18 tenderpoints," a likely reference to the 1990 ACR Criteria. 2021 WL 3260072, at *11. In Maggie R.W., the plaintiff "exhibited all eighteen of the associated tender points." 2021 WL 416825, at

*2. In contrast, Plaintiff's physician only noted that the Plaintiff was "[t]ender in all the traditional tender spots of fibromyalgia including SI regions." (R. 372). Plaintiff's physician did not reference the 1990 ACR Criteria, and "all the traditional tender spots" is too general to establish which tender points were tested, and certainly cannot establish that the requisite eleven-point threshold had been reached. See id. Furthermore, the Record fails to establish conformity with the second factor under the 2010 ACR Criteria, which requires "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions." Id. Other than references to "pain," the Record does not contain specific symptoms or signs, or if it does, those symptoms and signs have not been identified with sufficient clarity for the Court in the parties' briefing. See id. at 372, 373, 376, 464.

For the third factor, the Record does not indicate whether Plaintiff's treating physicians excluded all alternative causes for Plaintiff's symptoms before rendering her fibromyalgia diagnosis. Both the 1990 ACR Criteria and 2010 ACR Criteria require the exclusion of any "other disorders that could cause" the claimant's symptoms. SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). In April R.D., the physician specifically excluded alternative explanations for the plaintiff's pain, noting that her "current symptoms are not explained by an inflammatory arthritis or other autoimmune process." 2021 WL 3260072, at *11. In Maggie R.W., the judge noted that there was "evidence that other disorders that could cause these symptoms [had] been ruled out. . . . [Specifically,] a number of laboratory tests came back negative, including a test for Sjogren's Syndrome, the rheumatologist's primary alternative diagnosis at the time." 2021 WL 416802, at *9. There is no evidence that Plaintiff's physician similarly ruled out alternative causes.

In fact, much of Plaintiff's evidence and testimony appears to conflate Plaintiff's alleged fibromyalgia diagnosis with her other diagnoses. In November 2019, Plaintiff testified of her

fibromyalgia in tandem with her rheumatoid arthritis. <u>See</u> (R. 44) (testifying that she could not work "[d]ue to the extreme pain that [she] was having from [her] rheumatoid arthritis and fibromyalgia," and that the "deformity with the arthritis" was "affecting [her] hands"). Much of Plaintiff's Memorandum of Law in Support of Social Security Appeal is devoted to discussing Plaintiff's treatment for arthritis. <u>See</u> Pl.'s Mem. (ECF No. 19, at 3-5) ("Plaintiff treated with JoAnn W. Dervay, M.D., for multijoint arthritis, presumably rheumatoid."). Plaintiff also includes other symptoms, such as "generalized osseous demineralization," in her briefing, but she fails to connect those symptoms directly to fibromyalgia. <u>Id.</u> at 4. While the Court makes no specific findings regarding which symptoms are attributable to fibromyalgia and which to other diagnoses, this failure to distinguish between Plaintiff's symptoms indicates that "other disorders that could cause" her symptoms have not been excluded. SSR 12-2p, 2012 WL 3104869.

Lastly, Plaintiff contends that failure to classify fibromyalgia as a severe impairment permeates the remaining analysis. Pl.'s Mem. (ECF No. 19, at 10). In determining the RFC, an adjudicator is required to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Plaintiff asserts that "Plaintiff's fibromyalgia [might] add additional limitations given all of Plaintiff's hand impairments." Pl.'s Mem. (ECF No. 19, at 10). "[A]ny reduction in Plaintiff's ability to handle and finger would result in disability under the medical vocational guidelines" because, if Plaintiff "were limited to occasional hand usage bilaterally, all of Plaintiff's past relevant work would be precluded." <u>Id.</u> However, Plaintiff has failed to establish clearly from the Record that Plaintiff's alleged fibromyalgia, and not some other diagnosis, affected her hand usage.

Because the ALJ's finding that Plaintiff did not have a medically determinable severe impairment of fibromyalgia during, prior to, or after the relevant timeframe in this case is

supported by substantial evidence, this Report recommends dismissal of Plaintiff's appeal on this basis.

**D.    The ALJ who decided Plaintiff's case was constitutionally appointed, and therefore <u>Lucia</u> does not require remand under the Appointments Clause.**

Plaintiff's last argument for remand challenges the ability of the ALJ to decide Plaintiff's claim and is rooted in recent Supreme Court precedent, <u>Lucia v. SEC</u>, 138 S. Ct. 2044 (2018).  In <u>Lucia</u>, the Supreme Court held that ALJs employed by the Securities and Exchange Commission were inferior officers of the United States subject to the Appointments Clause.  That clause specifies "the permissible methods of appointing 'officers of the United States,' a class of government officials distinct from mere employees." <u>Lucia</u>, 138 S.Ct. at 2049.  Specifically, it requires such officers be appointed by the President, a court of law, or head of department. <u>Jones Bros. v. Sec'y of Labor</u>, 898 F.3d 669, 676 (6th Cir. 2018) (citing U.S. Const. Art. II, § 2, cl. 2).  Because the SEC ALJ was not a mere employee of the agency, but an officer whose appointment required action by the President, a court of law, or a department head, his appointment was defective and his action imposing the sanction under appeal was a nullity.  Following <u>Lucia</u>, many Social Security claimants raised similar challenges to the appointment of ALJs adjudicating their claims.  And earlier this year the Supreme Court held such claims could proceed in federal court even if claimants had not raised any objection to the appointment during administrative proceedings. <u>Carr v. Saul</u>, 141 S. Ct. 1352 (2021).

By 2020, when ALJ O. Price Dodson wrote the opinion challenged in this court, his appointment had been confirmed by the Acting Director of the SSA. <u>See</u> SSR 19-1(p), 2019 WL 13248666 (describing Acting Commissioner's ratification of ALJ appointments on July 16, 2019).  Plaintiff does not challenge the constitutionality of ALJ Dodson's appointment.  Rather, in the <u>Lucia</u> claim presented here, Plaintiff asserts that the 2017 ALJ Decision, rendered by ALJ Kerith

Cohen, was unconstitutionally decided under Lucia. Pl.'s Mem. (ECF No. 19, at 11-12). Therefore, Plaintiff argues that Lucia barred ALJ Dodson from relying on or otherwise incorporating ALJ Cohen's 2017 ALJ Decision, and because ALJ Dodson "admitted to having considered and been persuaded by a previous ALJ decision," the 2020 ALJ Decision is impermissibly tainted and must be remanded. Id. at 12.

It is undisputed that the 2020 ALJ Decision incorporates the 2017 ALJ Decision. Compare Pl.'s Mem. (ECF No. 19, at 11-12), with Def.'s Mem. (ECF No. 21, at 17). In fact, the Social Security Administration has emphasized the requirement for ALJs to rely upon all previous RFC findings when considering new periods of alleged disability:

> When adjudicating a subsequent disability claim . . . , an adjudicator . . . must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. . . . [A]n adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time . . . ; (2) the likelihood of such a change . . . ; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Acquiescence Ruling 00-1(4) (January 12, 2000) (applying Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999)) (emphasis added). ALJ Dodson noted that he gave "great weight to the prior unfavorable Administrative Law Judge decision," and specifically referenced the Fourth Circuit's holding in Albright v. Commissioner, upon which the Social Security Administration's rule is based. (R. 27). After considering the evidence, ALJ Dodson held that "the evidence in the current claim warrants no changes in the findings" from the 2017 ALJ Decision. Id. Thus, ALJ Dodson's reliance was both explicit and in compliance with established Social Security Administration practices and Fourth Circuit precedent.

Plaintiff also did not directly appeal the 2017 ALJ Decision. In Carr v. Saul, the United States Supreme Court held that a claimant could pursue an Appointments Clause challenge during

judicial review notwithstanding failing to first raise the challenge to the ALJ. Carr, 141 S. Ct. at 1356. Petitioner has asserted that this is "Plaintiff's first challenge to the prior ALJ decision in Federal Court, as Lucia had not been decided at the time of the prior decision." Pl.'s Mem. (ECF No. 19, at 11). However, Plaintiff is not challenging the 2017 ALJ Decision. Plaintiff chose not to seek judicial review of the 2017 ALJ Decision, which made that decision final and binding. See 20 C.F.R. §§ 404.955(b); 404.987; 416.1455(b); 416.1487. All "findings of fact" listed in the 2017 ALJ Decision are also final. 42 U.S.C. § 405(h). Furthermore, because Carr only excuses exhaustion within the same case, not generally for all Appointment Clause challenges, Plaintiff is not excused from failing to appeal the 2017 ALJ Decision directly. See Carr, 141 S. Ct. at 1356. Therefore, Plaintiff cannot collaterally attack the 2017 ALJ Decision at this point.

The only contention for the Court to resolve is whether Lucia prohibits ALJs from relying upon final administrative decisions, as required by the Social Security Administration and Albright, that were rendered before the Acting Commissioner's ratification of ALJ appointments on July 16, 2019. SSR 19-1(p), 2019 WL 13248666. Lucia does not stretch that far. In Lucia, the plaintiff "contested the validity of [the Judge's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and [the Supreme Court]." Lucia, 138 S. Ct. at 2055. The plaintiff was not collaterally attacking a separate final opinion for which all potential appeals were procedurally defaulted. See id. As the Commissioner raises in his Motion, "the limits on the waiver of sovereign immunity Congress set forth in 41 U.S.C. § 405(g) would be judicially amended" if the Court were to permit Plaintiff's contention in this case. Def.'s Mem. (ECF No. 21, at 3); see also Bowen v. City of New York, 476 U.S. 467, 479 (1986) ("[T]he 60-day [appeal] limit . . . is a condition on the waiver of sovereign immunity and thus must be strictly construed."). Lucia does not provide this Court with any authority to reopen final decisions.

Furthermore, this district has previously denied the argument Plaintiff is making here, and there is no reason to depart from that prior analysis in this case. See Camille B. v. Kilolo Kijakazi, No. 20-cv-262, 2021 WL 4205341 (E.D. Va. Sept. 15, 2021) (adopting the magistrate judge's report and recommendation to dismiss the Appointments Clause challenge because "[t]he ALJ was properly appointed during the entire administrative adjudication that this Court [wa]s reviewing"). Therefore, ALJ Dodson's reliance on the 2017 ALJ Decision does not constitutionally taint the 2020 ALJ Decision.

## V.      **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 21), DENY Plaintiff's Motion for Summary Judgment (ECF No. 19), and AFFIRM the Commissioner's finding of no disability.

## VI.      **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 28, 2021